

**SO ORDERED.**

**SIGNED this 26 day of September, 2008.**

*Dale L. Somers*
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br><br>JAMES REED JONES,<br>GLENDA JO JONES,<br><br>DEBTORS. | CASE NO. 07-10902-13C<br>CHAPTER 13 |

## OPINION DENYING TRUSTEE'S OBJECTION TO PLAN BASED ON DEBTORS' POSTPETITION COMMENCEMENT OF RETIREMENT CONTRIBUTIONS, BUT DENYING PLAN CONFIRMATION BASED ON OTHER PROBLEMS

This matter came before the Court on August 5, 2008, for a trial on the Chapter 13 Trustee's objection to the Debtors' plan on the ground their postpetition commencement of retirement contributions showed they had not proposed the plan in good faith, as required by § 1325(a)(3). The Debtors appeared in person and by counsel James P.

Rupper. The Trustee appeared by counsel Christopher T. Micale. The Court heard testimony and received other evidence, heard the arguments of counsel, and is now ready to rule.

The Debtors filed a Chapter 7 petition to commence this case, but the United States Trustee investigated their finances and, after belatedly receiving documentation from them, determined the presumption arose under § 707(b) that granting the Debtors relief would be an abuse of the provisions of Chapter 7. Rather than contest that conclusion, the Debtors agreed to convert their case to Chapter 13, although it took them a couple of months to do so. Simultaneous with the conversion, having learned her employer was changing its retirement plan so it would match contributions she made but otherwise make no contributions to the plan, the Debtor-wife began contributing to the retirement plan. The Chapter 13 Trustee objected that action showed the Debtors were not proposing their plan in good faith, so it could not be confirmed. A short time before the trial on that objection, the Trustee learned the Debtors had been making payments on a car loan and on a student loan debt directly to the creditors instead of paying them through the Trustee. In fact, they paid off the car loan before the trial. The Debtors are also making payments on a second mortgage on their home that will be paid off in about March of 2009. After considering the circumstances of this case, the Court concludes the postpetition commencement of retirements contributions, standing alone, does not establish that the Debtors have not proposed their plan in good faith, but further concludes their present plan cannot be confirmed.

2

**FACTS**

The Debtors filed a Chapter 7 bankruptcy petition in April 2007. The Debtor-husband ("Husband") is a bus driver and the Debtor-wife ("Wife") is a registered nurse, and they have no dependents. In August 2008, the Husband testified he would turn 58 years old later that month, and the Wife testified she was already 58. The Husband has high blood pressure, borderline high cholesterol, and sleep apnea; he is also overweight. He takes a prescription drug for the high blood pressure, and has had some treatment for his sleep apnea. By the time of the trial, however, these conditions had not affected his earning capacity. The Wife has diabetes, high blood pressure, high cholesterol, and arthritis. She takes an oral medication and injected insulin for her diabetes. She also had one of her knees replaced during 2007 due to arthritis, and needs to have the other one replaced, too. Despite her knee replacement, the earned income the Debtors reported on their 2007 federal tax return was only about $1,000 less than they reported on their 2006 return.

The Debtors did not report in their original bankruptcy schedules that the Wife had an interest in a pension plan established by her employer. At that time, the employer was paying money into the Wife's account under the plan even if she did not. The Debtors' report of their income and expenses on Schedules I and J filed with their Chapter 7 petition showed the Wife was not then contributing any of her salary to the plan.

Along with their bankruptcy petition, the Debtors filed a Form B22A, "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation." On it, they reported

3

their income for the six-month period ending before April 2007 was above the median for a family of two in Kansas, and they calculated their monthly disposable income under § 707(b)(2) of the Bankruptcy Code to be $42.83. The United States Trustee's office had some questions about their calculation, and requested documentation of various items. The UST filed a motion to compel the Debtors to supply the documentation, and later obtained agreed extensions of its deadlines to move for dismissal for abuse under § 707(b) and to object to discharge under § 727 before the Debtors supplied the needed information. After receiving the materials, the UST made various adjustments to the Debtors' calculation on Form B22A, and concluded they had almost $540 in monthly disposable income, meaning a presumption of abuse arose in their case under § 707(b).

In about August 2007, the UST conferred with the Debtors' attorney, who agreed the Debtors would be unable to rebut the presumption of abuse and would convert their case to Chapter 13. The UST sent the attorney an agreed motion to convert, but had to wait a long time for the motion to be signed and returned. The motion was finally filed on October 12, 2007, and an order converting the case was filed a few days later.

On October 23, 2007, the Debtors filed amended Schedules I and J, listing their income and expenses, and a Form B22C, "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." The Court has compared the amended Schedules I and J to the original ones the Debtors filed, and cannot find any difference between them. The Debtors did not report on the new Schedules I and J that the Wife was contributing any money to her employer's pension

4

plan. On line 55 of the Form B22C, however, the Debtors reported that she was contributing $220 per month to the plan. After initially disputing the amount of the Debtors' claimed charitable contributions, the Trustee has stipulated the Debtors give $576.77 per month to charity, as they reported on line 45 of the Form B22C.

The Wife explained that in the latter part of 2007, her employer began telling its employees it would be changing its retirement plan to one where it would match contributions they made but would otherwise not contribute to the plan. The change would take effect on April 1, 2008. The Debtors had not reported on their original schedules that either of them had a retirement plan. The Husband said because they didn't put any money into the plan and didn't know how much money was in it, they didn't realize it was an asset; instead, they just thought of it as their only hedge against retirement, except for Social Security. As part of the change in the retirement plan, the Wife learned her interest in the old plan was worth about $148,000, an amount that would be rolled over into the new plan. She understood she was permitted to contribute up to 9% of her pay into the retirement plan. Her gross pay was reported to average about $4,800 per month as of the time they filed for bankruptcy, so she would have been able to contribute up to $430 per month. Apparently because she also routinely worked some overtime, she thought she could contribute up to $300 per bi-weekly pay period, which would be $645 per month. Instead of making the maximum contribution allowed, she began contributing $220 per month about the time their case was converted to Chapter 13. Based on their circumstances, the Debtors decided they needed to contribute to the plan if

5

they were going to have any income after retiring.

The Debtors filed a Chapter 13 plan a couple of weeks after their case was converted to that chapter. They proposed to pay $100 per month into their plan for the sixty months it must run. The plan said they were current on both mortgages on their home and would continue making postpetition payments directly to the creditors. The payment on the second mortgage was $254.79 per month. The plan said the Debtors would pay through the plan $1,885 they owed on a vehicle; their monthly payment on this debt was $300. The plan was somewhat unclear how the Debtors proposed to treat their student loan debt. It said: "Student loan creditors (on student loans that are not current) being paid by the Trustee, shall be paid, pro rata, with other unsecured creditors unless otherwise indicated," and went on to explain that interest would continue to accrue postpetition on student loan debts, and the Debtors would still owe any amount not paid during the bankruptcy case unless they obtained a judgment declaring the debts to be dischargeable. The plan did not indicate whether the Debtors were current on their student loan debt or how the treatment of the debt would change if they were, nor was any different treatment "otherwise indicated." The Debtors' monthly payment on their student loan debt was $147.

After filing their plan and despite the plan's provisions, the Debtors continued making the $300 monthly payments on their vehicle directly to the secured creditor. That debt was paid in full before the August 2008 hearing on the Trustee's objection to their plan. The Husband testified he was not aware their plan said those payments were to be

6

made to the Trustee, due to failed communication between the Debtors and their attorney. The payments were made through an on-going automatic deduction from their checking account. They continued to make payments on their student loans directly to the creditor, payments which also appear to have been made automatically from their checking account. They have continued making their second mortgage payments directly to the creditor, and that debt is scheduled to be paid off by the payment they should make in March 2009.

On July 31, 2008, the Debtors amended two of their schedules. They amended Schedule B, "Personal Property," to report the Wife's interest in her employer's retirement plan, which they valued at $148,000. They amended Schedule F, "Creditors Holding Unsecured Nonpriority Claims," to add a student loan debt of $10,893 which they had not listed on their original schedules.

**DISCUSSION**

Among many other things, a Chapter 13 plan may be confirmed only if it "has been proposed in good faith."[1] The Tenth Circuit has directed bankruptcy courts to consider the totality of the circumstances in determining whether plans satisfy the "good faith" requirement. In *Flygare v. Boulden*, the Circuit first listed a number of factors that could be relevant in determining good faith.[2] The Circuit most recently discussed the

---

[1] 11 U.S.C.A. § 1325(a)(3).

[2] 709 F.2d 1344, 1347-48 (10th Cir. 1983).

good faith requirement in *Young v. Mason (In re Mason)*,[3] saying:

> As a general matter, a determination of good faith must be made on a case by case basis, looking at the totality of the circumstances. *See Pioneer Bank v. Rasmussen (In re Rasmussen)*, 888 F.2d 703, 704 (10th Cir.1989). "In evaluating whether a debtor has filed in good faith, courts should be guided by the eleven factors set forth in *Flygare v. Boulden*, 709 F.2d 1344, 1347-48 (10th Cir.1983), as well as any other relevant circumstances." *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 (10th Cir.1993) (footnote omitted). The eleven *Flygare* factors are:
>
>> (1) the amount of proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.
>
> *Flygare*, 709 F.2d at 1347-48 (quoting *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)). But "the weight given each factor will necessarily vary with the facts and circumstances of each case." *Id*. at 1348.[4]

As indicated, the Trustee's objection asked the Court to determine that the Debtors' plan had not been proposed in good faith based solely on the fact they started to make contributions to the Wife's retirement plan after they filed their bankruptcy petition. The Court notes the Debtors also knew when they started the contributions that their case either had been or soon would be converted to Chapter 13, so they should also have

---

[3] 237 F.3d 1168, 1174-75 (10th Cir. 2001).

[4] *Young*, 237 F.3d at 1174-75.

8

known starting the contributions would reduce the amount they would have available to pay into a Chapter 13 plan. But the same would be true if they had started the contributions the day before they filed for bankruptcy, and the Trustee seemingly concedes that would have been permissible. The Court is not convinced the fact the Wife's contributions started postpetition should control the good faith analysis here.

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,[5] Congress provided that money an employer withholds from an employee's wages to contribute to a retirement plan like the Wife's is neither property of the bankruptcy estate nor disposable income in a Chapter 13 case.[6] This Congressional protection for such contributions could be interpreted to mean a "good faith" analysis of a debtor's Chapter 13 plan can never rely on the fact the debtor is making such contributions to find a lack of good faith. When the Circuit decided *Flygare*, however, the Bankruptcy Code provided that some debts that were nondischargeable in Chapter 7 were not excepted from discharge in Chapter 13, and the Circuit nevertheless ruled the fact a debtor had a debt that could not be discharged in Chapter 7 could support a finding of a lack of good faith in proposing a Chapter 13 plan. Consequently, the Court concludes the fact the Debtors are contributing to a retirement plan can be considered in analyzing their good faith in proposing their plan.

---

[5]Pub. L. No. 109-8, § 323, 119 Stat. 23 (2005)

[6]*See* 11 U.S.C.A. § 541(b)(7) (excluding such contributions from the estate and from disposable income under § 1325(b)(2)).

9

Under these Debtors' circumstances, the Court believes their commencement of retirement contributions does not show their plan was not proposed in good faith. Both Debtors are fast approaching retirement age, and also have medical conditions that might hasten their retirements. After the Debtors filed for bankruptcy, the Wife's employer changed its retirement plan from one where it made contributions even if the Wife did not to one where it would match the Wife's contributions but otherwise make none. The Debtors have only Social Security and the Wife's retirement plan account to rely on for support after they retire. Without new contributions, the Wife's retirement plan account would not grow nearly as fast during their few remaining working years as it would with them. Although the Debtors began making the contributions while they were in bankruptcy, they are contributing only about one-half (or less) of the full amount the Wife could legally contribute to the plan. In other circumstances, a debtor who commences retirement contributions while in a bankruptcy case might be demonstrating a lack of good faith, but that is not so in this case.

On the other hand, various considerations suggest the Debtors might not have acted in good faith in formulating their Chapter 13 plan. Their original bankruptcy schedules were not as accurate as they should have been, and the Debtors have been slow to correct them. The Debtors did not comply with the UST's requests for additional information as quickly as they should have. Their proposed $100 per month plan payment is relatively small compared to their retirement and charitable contributions. They have not proposed to increase their plan payments during the sixty months their plan

10

must run, even though they have already made the last $300 monthly payment they owed on their vehicle and they should make the last $254.79 monthly payment they owe on their second mortgage in March of next year. Furthermore, the Debtors have effectively preferred their student loan creditor over their other unsecured creditors by making direct payments to it instead of paying that $147 per month into their plan. Their plan did not reveal that they would be paying that creditor directly, or that those payments would give that creditor a greater percentage on its claim than the other unsecured creditors would receive through pro rata distributions under the plan. The Court will not make a finding now that the plan was not proposed in good faith, but will not confirm the plan as submitted. As directed at the end of the trial, the Debtors will have to amend their plan.

**CONCLUSION**

For these reasons, the Court rejects the Chapter 13 Trustee's argument that the Debtors' postpetition commencement of retirement plan contributions, standing alone, establishes that their Chapter 13 plan was not proposed in good faith. However, the Court will not confirm the plan as proposed, and the Debtors must file an amended plan to address the other concerns identified in this opinion.

# # #